IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, § § § <br> Plaintiff, § § <br> v. § § <br> L.C. JORDAN & SON, A PARTNERSHIP, and TEXAS STATE BANK, § § § § § <br> Defendants. § | Civil Action No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") files its Original Complaint against Defendants L.C. Jordan & Son, A Partnership ("LC Jordan") and Texas State Bank ("Bank").

### I.    PARTIES

1. Philadelphia Indemnity Insurance Company is a corporation organized under Pennsylvania law. At all relevant times, Philadelphia was and is qualified to and does conduct business as a surety in the State of Texas.

2. Upon information and belief, Defendant L.C. Jordan & Son ("LC Jordan") is a general partnership organized under Texas law. LC Jordan may be served with process by serving its general partner Lawrence C. Jordan at 4108 S. Chestnut St., Lufkin, Texas 75901 or wherever he may be found.

3. Texas State Bank is a Texas financial institution organized under Texas law and may be served with process by serving its registered agent Mark Lowery at 1601 S. Chestnut St., Lufkin, Texas 75901.

## II.     JURISDICTION AND VENUE

4.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is proper in this District under 28 U.S.C. 1391(b)(1) because multiple Defendants reside in this district and division and all Defendants are residents of Texas.

## III.    FACTUAL BACKGROUND

**A.    LC JORDAN EXECUTED A GENERAL INDEMNITY AGREEMENT IN WHICH BONDED PROJECT BALANCES WERE DEFINED AS TRUST FUNDS.**

6.     On or about November 2, 2011, LC Jordan and multiple affiliated individuals executed a General Indemnity Agreement ("Indemnity Agreement") in favor of Philadelphia.[1] In Paragraph 3 of the Indemnity Agreement, LC Jordan, among others, agreed:

> to indemnify and hold harmless [Philadelphia] from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of the Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Indemnitors obligation to indemnify [Philadelphia] shall also apply to any Bond renewals, continuations or substitutes therefore. In the event of payments by [Philadelphia], Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to [Philadelphia] in any demand, claim or suit by [Philadelphia]. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by [Philadelphia]. [Philadelphia] may, but shall not be obligated to, join any or all of the Indemnitors or Principals as parties to any action relating to any Bonds or this Agreement, and [Philadelphia] shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Indemnitors or Principals. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to [Philadelphia] under this Agreement, at law, or in equity have been fully satisfied. [Philadelphia] shall be

---

[1] A copy of the Indemnity Agreement is Exhibit 1.

entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.[2]

7.      The Indemnity Agreement defined "Default" to include:

> Any instance or condition where Principal or Indemnitors: (i) fail to pay any Bond premium charge when due; (ii) forfeit, breach, abandon, default, or be declared in default on any Bonded Contract; (iii) neglect or refuse to pay for any labor or materials used in the prosecution of a bonded contract; (iv) fail to honor any obligation under this Agreement; (v) file for protection under the United States Bankruptcy Code or other similar statute, or initiate a proceeding requiring the appointment of a receiver or trustee for the benefit of creditors; (vi) have proceedings instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay, or impede the normal and satisfactory progress of the work; (vii) make an assignment for the benefit of creditors that in any way impedes the rights of [Philadelphia]; (viii) with respect to any Indemnitors which are not individuals, dissolve or cease to continue their legal existence; (ix) in the case of Indemnitors who are individuals, die, abscond, disappear, become incompetent, are convicted or a felony or are imprisoned; or (x) violate any other written agreement with [Philadelphia].[3]

8.      Upon default, Defendants agreed to assign all bonded project balances due or to become due:

> [a]ssign, transfer and set over to [Philadelphia], as of the date of execution of each Bond, all of their rights under all Bonded Contract(s) including: (a) their right, title and interest in all sub-contracts and purchase orders let in connection therewith; (b) all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for purposes of the Bonded Contract(s) including all materials which shall be upon the site of the work or elsewhere for purpose of the Bonded Contract(s); (c) all claims and causes of action against any parties to the Bonded Contract(s) or against third parties relating to the Bonded Contract(s); (d) **any and all sums due, or to become due under the Bonded Contract(s), including all monies earned or unearned which are unpaid at the time of notice from [Philadelphia] to the Obligee regarding such sums**; (e) all rights it has in patents, patented processes, licenses, designs, copyrights, trademarks and all other intellectual property rights required for the performance of the work for which [Philadelphia] has issued bonds, and expressly authorize [Philadelphia] to use these property rights as required in [Philadelphia's] discretion to complete the Bonded Contracts; and (f) any other rights to payment from any person or entity in relation to the Bonded Contracts, including but not limited to, any insurance proceeds or premium refunds, any tax or assessment refunds, or any rights to payment by virtue

---

[2] *See* Exhibit 1 ¶ 3.
[3] *See* Exhibit 1 ¶ 1(h).

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                Page 3

> or participation in a partnership, joint venture, or the like. . . . In the event of Default, Principal and Indemnitors further hereby agree to appoint and designate [Philadelphia] and it's authorized representatives as their respective Attorneys-in-Fact with power to (i) endorse and sign in the name of Principal or Indemnitor, as payee or otherwise, all documents and all checks, drafts, warrants or other instruments made or issued in connection with the Bonded Contract(s); (ii) direct the Obligee or project owner to deposit any further progress payments or other forms of payment in relation to a Bonded Contract to a specific bank account, or to make checks payable, jointly, to the Principal and the [Philadelphia] or to the Principal and such laborers, materialmen, or others as may be indicated by [Philadelphia].[4]

9. Moreover, LC Jordan agreed that all funds due to become due under any bonded contract constituted trust funds:

> "all funds due or to become due under any Bonded Contract are trust funds, whether in the possession of [LC Jordan] or another and whether designated trust funds or not, for the benefit and payment of all persons to whom [LC Jordan] incurs obligations in the performance of such contract, for which [Philadelphia] would be liable under any Bond. If [Philadelphia] discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds."[5]

10. Relying on its rights under the Indemnity Agreement, Philadelphia executed performance and payment bonds (collectively, "Bonds") on behalf of and/or at the request of Defendants for multiple construction projects in the state of Texas (collectively, "Bonded Projects"):

| Obligee | Project | Bond No. |
|---|---|---|
| State of Texas | TxDOT Project No. STP 2018 | PB03228302206 |
| State of Texas | TxDOT Project No. STP 2018 (066) HES ETC | PB03228302044 |
| State of Texas | TxDOT Project No. RMC 631001001 | PB03228302020 |
| State of Texas | TxDOT Project No. STP 2018 (7751) HES | PB03228302205 |
| State of Texas | TxDOT Project No. BR 2018 (438) | PB03228302134 |
| State of Texas | TxDOT Project No. STP 1702 (636) | PB03228302022 |
| State of Texas | TxDOT Project No. STP 2018 (756) | PB03228302204 |
| State of Texas | TxDOT Project No. RMC 63278001 | PB03228302312 |
| State of Texas | TxDOT Project No. RMC 630760001 | PB03228301900 |
| State of Texas | TxDOT Project No. RMC 632297001 | PB03228302110 |
| State of Texas | TxDOT Project No. BPM 633012001 | PB03228302325 |
| State of Texas | TxDOT Project No. RMC 631396001 | PB03228301959 |
| State of Texas | TxDOT Project No. RMC 633542001 | PB03228302258 |
| State of Texas | TxDOT Project No. BPM 633081001 | PB03228302327 |

---

[4] *See* Exhibit 1 ¶ 5.
[5] *See* Exhibit 1 ¶ 21.

| State of Texas | TxDOT Project No. RMC 632779001 | PB03228302324 |
| State of Texas | TxDOT Project No. RMC 632780001 | PB03228302223 |
| State of Texas | TxDOT Project No. STP 2017(500)HES ETC. | PB03228301828 |
| State of Texas | TxDOT Project No. BPM 633542001 | PB03228302353 |

**B.    LC JORDAN REQUESTS FINANCING FROM PHILADELPHIA AND USES BONDED PROJECT FUNDS TO MAKE PAYMENTS ON ITS LINE OF CREDIT.**

11.     While multiple Bonded Projects were under construction, LC Jordan represented to Philadelphia that they lacked the ability to pay their obligations on the Bonded Projects. LC Jordan requested that Philadelphia provide financing to enable LC Jordan to make payroll and complete the Bonded Projects. When LC Jordan requested financing in early November 2018, it sent Philadelphia an unpaid bills detail showing outstanding payments owed to Bonded Project subcontractors and suppliers for work and material supplied in August, September, and October 2018. LC Jordan's failure to pay timely for labor and materials constituted an event of default triggering the Indemnity Agreement's assignment clause. From then on, Philadelphia had a superior right to the sums due on the Bonded Projects.

12.     From November 2018 to October 2019, Philadelphia provided monthly financing to LC Jordan under a Financing Agreement secured by a Deed of Trust executed by LC Jordan affiliate J.J.B.J.C.P., Inc.

13.     Even though LC Jordan induced Philadelphia to provided financing by claiming that it did not have enough cash to pay its subcontractors and suppliers, LC Jordan used funds provided by Philadelphia to pay down its line of credit with the Bank.[6] LC Jordan transferred at least $296,572.60 to the Bank in November 2018.[7] LC Jordan's transfer violated the Indemnity Agreement's assignment and trust fund provisions.

---

[6] Bank Loan Activity Statement, attached as Exhibit 2.
[7] Exhibit 2.

C. **PHILADELPHIA HAS A SUPERIOR RIGHT TO BONDED PROJECT FUNDS VIA ITS ASSIGNMENT RIGHTS AND EQUITABLE SUBROGATION.**

14. Philadelphia has a superior right to all Bonded Project funds because LC Jordan's failure to make timely payments to its subcontractors and suppliers triggered the assignment provision in the Indemnity Agreement.

15. Philadelphia is entitled to the Bonded Project funds because it is equitably subrogated to LC Jordan's right to receive those funds. Equitable subrogation is a doctrine that allows a surety to stand in the shoes of the party that benefitted from its performance of the surety obligation to prevent unjust enrichment to the wrongdoer who caused the surety's expense. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 (1962); *Lyndon Prop. Ins. Co. v. Duke Levy and Associates*, LLC, 475 F.3d 268, 270-71 (5th Cir. 2007). Equitable subrogation "is not dependent upon contract but arises by operation of law or by implication in equity to prevent injustice." *Interfirst Bank, N.A. v. U.S. Fidelity & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied). Indeed, the doctrine presumes that "substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form." *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 724 (Tenn. Ct. App. 2008) (quoting 83 C.J.S. Subrogation § 1-2). "[P]robably there are few doctrines better established than that a surety who pays the debt of another is entitled to the rights of the person he paid to enforce his right to be reimbursed." *Pearlman*, 371 U.S. at 136-37. "Application of the doctrine is said to be the 'purest of equities' and the courts of Texas are said to be particularly hospitable to it." *Interfirst Bank*, 774 S.W.2d at 397 (quoting *Yonack v. Interstate Sec. Co.*, 217 F.2d 649, 651 (5th Cir. 1954)).

16. Philadelphia fulfilled its Bond obligations by facilitating completion of Bonded Projects in response to performance bond claims. To date, Philadelphia has incurred losses in the

amount of $3,831,696.73 as a result of its execution of the Bonds, investigation of claims against the Bonds, and financing of LC Jordan.

## IV.  CAUSES OF ACTION

### A.  VIOLATIONS OF TEXAS UNIFORM FRAUDULENT TRANSFER ACT

17. Philadelphia incorporates the foregoing factual allegations by reference as if fully set forth herein.

18. LC Jordan transferred funds received from Philadelphia to the Bank at a time when LC Jordan represented to Philadelphia that it could not pay subcontractors and suppliers. LC Jordan made transfers to the Bank shortly before incurring substantial debt to Philadelphia in the form of additional financing to assist with payroll and unpaid bills from Bonded Project subcontractors and suppliers.

19. LC Jordan's transfer of $296,572.60 constitutes a violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The transfers were made with actual intent to hinder, delay, or defraud Philadelphia. Or the transfers were made without receiving reasonably equivalent value in exchange and LC Jordan intended to incur, believed, or reasonable should have believed that they would incur debts beyond LC Jordan's ability to pay as they became due. Indeed, LC Jordan represented to Philadelphia that it could not pay subcontractors and suppliers at or near the time it transferred funds received from Philadelphia to the Bank.

20. As a result, Philadelphia is entitled to the remedies under TUFTA, including, but not limited to, actual, incidental, and consequential damages; avoidance of the transfers; attachment or other prejudgment remedy against the assets of LC Jordan; and any further equitable relief appropriate for these circumstances.

### B. RECOVERY OF ATTORNEY FEES AND EXPENSES

21. Philadelphia incorporates the foregoing factual allegations by reference as if fully set forth herein.

22. Philadelphia is entitled to an award of costs and attorneys' fees under § 20.013 of TUFTA.

## V. CONDITIONS PRECEDENT

23. All conditions precedent to the bringing the current action have occurred or been performed.

## VI. REQUEST FOR RELIEF

24. For these reasons Plaintiff Philadelphia Indemnity Insurance Company requests that LC Jordan and the Bank be cited to appear and answer here, and that Plaintiff be granted judgment against LC Jordan and the Bank for each of the following:

(a) Judgment against Defendants, in the amount of damages incurred by Philadelphia;

(b) Avoidance of the $296,572.60 in transfers to the Bank made in the fall of 2018;

(c) Attachment or other prejudgment remedy against the assets of LC Jordan;

(d) Pre-judgment and post judgment interest at the maximum permissible rate allowed by law;

(e) Attorneys' fees and costs of court; and

(f) Such other relief to which Philadelphia is justly entitled.

Respectfully submitted,

*/s/ Mike F. Pipkin*
MIKE F. PIPKIN
State Bar. No. 16027020
SCOTT MCFADIN
State Bar No. 24098074

**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, TX 75206
Telephone:(469) 629-5300
Facsimile: (214) 865-6140
E-Mail: mpipkin@weinrad.com
smcfadin@weinrad.com

**ATTORNEYS FOR PLAINTIFF
PHILADELPHIA INDEMNITY INSURANCE
COMPANY**